UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JENEBA JALLOH GHATT,

    Plaintiff,

v.

THOMAS W. SEILER,
ROBINSON, SEILER & ANDERSON, LC,
and
JAMES C. YATES,

    Defendants.

Civil Action No. TDC-16-3445

## MEMORANDUM OPINION

Plaintiff Jeneba Jalloh Ghatt filed this action alleging state common law claims of defamation, false light, disparagement, malicious use of process, tortious interference with contract, and breach of the implied covenant of good faith and fair dealing, all arising out of proceedings relating to the performance of an escrow agreement for which Ghatt was the escrow agent. Pending before the Court is the Motion to Dismiss filed by Defendants Thomas W. Seiler and Robinson, Seiler & Anderson, LC ("RSA") (collectively, "the Seiler Defendants"). For the reasons set forth below, the Motion is granted.

## BACKGROUND

In December 2014, Ghatt, an attorney, entered into an escrow agreement ("the Agreement") with Strategic Capital Enterprises, Inc. ("Strategic Capital") and Grove Plaza, LLC ("Grove Plaza") on behalf of the Ghatt Law Group, which is now defunct. Under the Agreement, Strategic Capital and Grove Plaza appointed the Ghatt Law Group as the escrow agent in connection with a joint venture through which Strategic Capital would secure a $5

million loan to Grove Plaza. Grove Plaza was to deposit $500,000 into an escrow account, which would then be disbursed to Strategic Capital only after Ghatt Law Group (1) verified that Strategic Capital, in turn, had deposited $500,000 "into a sub-account at Citi Private Bank in the name of Grove Plaza, LLC" and (2) delivered a confirmation of deposit letter and a copy of a letter of authorization to Grove Plaza, Strategic Capital, and New Freedom Group, LLC. Agreement ¶¶ 2.1, 6.4, ECF No. 23-2. Ghatt alleges that the owners of Grove Plaza had persuaded Defendant James C. Yates to loan Grove Plaza the $500,000 needed for the escrow cash deposit in exchange for a $250,000 return on investment after three months and an ownership interest in Grove Plaza. Under the arrangement, if Grove Plaza was unable to secure the loan, Yates would be refunded the $500,000. Yates agreed to the arrangement with the knowledge that his money would be received by Strategic Capital and used to secure the loan.

Later that month, Ghatt received verification from Citi Private Bank that the sub-account had been created, followed the instructions in the Agreement, and disbursed "the bulk of the $500,000 less fees" to Strategic Capital. Am. Compl. ¶ 25. She took no further action, operating under the belief that the deposit would automatically be refunded to Yates if the loan was not secured. When the loan was not secured within a three month period and Yates did not automatically recover his investment, he hired Seiler of RSA as his attorney.

According to Ghatt, Yates told the Seiler Defendants that he knew that his money would be promptly disbursed to Strategic Capital. Seiler, however, believed that he was most likely to be able to recover Yates's investment if he brought suit against Ghatt claiming that she had breached her duty to Yates and had "purposefully lured Yates to send her money by sending him a letter of inducement." *Id.* ¶¶ 31-32. Seiler therefore filed a complaint in Utah state court on behalf of Yates in which, according to Ghatt, Seiler "presented false and misleading claims" and

provided only two pages of the full Agreement in order to create the impression that Ghatt had cheated Yates out of money. During a February 8, 2016 hearing in that proceeding, Seiler stated that Ghatt had sent Yates two pages of the Agreement "in order to create a false impression" that she induced Yates to release the $500,000 to her, before then admitting that she had not sent Yates any communications, including but not limited to the Agreement. *Id.* ¶¶ 40-41. Seiler also coordinated with two other parties in the Utah proceeding to have them sign and submit an affidavit with facts that he knew were "misleading and inaccurate." *Id.* ¶ 63. The Utah state court ultimately issued an order finding that Ghatt violated the duty of care she owed to Yates, causing her to have to appeal the order and expend resources to continue to defend herself.

Seiler also filed related claims in Maryland. On March 22, 2015, Seiler filed a complaint with the Attorney Grievance Commission of Maryland that Ghatt asserts to be an attempt to present Ghatt in "a bad light" and advance his client's case in Utah. *Id.* ¶¶ 35, 118. According to Ghatt, on July 20, 2016, Seiler "insinuated" to the Attorney Grievance Commission that Ghatt had sent Yates two pages of the Agreement in order "to create an impression that she attempted to swindle Yates out of money." *Id.* ¶ 44. Then on October 12, 2015, Seiler filed a complaint with the Client Protection Fund of the Bar of Maryland in which he falsely alleged that Ghatt had stolen, and breached her duty to protect, Yates's money.

Ghatt filed this action in the Circuit Court for Prince George's County, Maryland. The Seiler Defendants then removed the case to this Court with the consent of Yates. At a November 9, 2016 case management conference, the parties agreed that Ghatt, having been informed of the Seiler Defendants' arguments for dismissal, would amend the Complaint to address those issues before the Seiler Defendants filed their motion to dismiss. The Court notified Ghatt that because she had been given the opportunity to amend, if the Amended Complaint was nevertheless

3

deficient, the Court would likely dismiss with prejudice without further opportunity to amend. On November 28, 2016, Ghatt filed her Amended Complaint, alleging that, as a result of Defendants' actions in the Utah and Maryland proceedings, she has had to pay legal fees to defend herself; has suffered extreme and severe emotional distress, anxiety and humiliation; lost potential work and income; had to close down her firm; and is facing the possible loss of her law license.

## DISCUSSION

The Seiler Defendants are seeking dismissal of all counts of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). They argue that Ghatt's claims for defamation (Count I) and false light (Count II) are barred by common law privilege and that Ghatt has not alleged sufficient facts to state a claim for disparagement (Count III), malicious use of process (Count IV), tortious interference with contract (Count V), or breach of the implied covenant of good faith and fair dealing (Count VI). They also argue that Ghatt's claims of defamation, false light, and disparagement are time-barred.

### I.   Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

The Court notes that while pleadings of self-represented litigants are to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the United States Court of Appeals for the Fourth Circuit has not yet decided "whether a pro se plaintiff who is also an attorney receives the benefit of this liberal construction," *Willner v. Dimon*, 849 F.3d 93, 103 (4th Cir. 2017) (quoting *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 72 (4th Cir. 2016)). Out of an abundance of caution, the Court will construe Ghatt's Amended Complaint liberally.

Courts are permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)) (internal quotation marks omitted). Here, Ghatt refers to and relies upon the Agreement in her Amended Complaint and does not dispute the authenticity of the copy attached to the Motion. The Court will therefore consider the Agreement. However, the affidavits and exhibits attached to Ghatt's Opposition to the Motion, consideration of which the Seiler Defendants oppose, are not integral to the Amended Complaint and therefore will not be considered.

## II. Defamation, False Light, and Disparagement

Ghatt alleges that Defendants defamed her between March 2015 and July 2016 by placing "false and misrepresented facts in their complaints and various pleadings" during the proceedings in Utah and Maryland. Am. Compl. ¶¶ 121-22. Under Maryland law, to establish a *prima facie* case of defamation, a plaintiff must establish that (1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff

thereby suffered harm. *Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001). Under the first element, a defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.* (quoting *Rosenberg v. Helinski*, 616 A.2d 866, 871 (Md. 1992)). Under the second element, a statement is "false" if it was "not substantially correct." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012). Establishing the third element, that a defendant is legally at fault, requires a showing that, at a minimum, the party making the false statement acted negligently. *Hearst Corp. v. Hughes*, 466 A.2d 486, 490-92 (Md. 1983). For the fourth element, actual harm must generally be established. *Id.* at 493; *Shapiro v. Massengill*, 661 A.2d 202, 217-18 (Md. Ct. Spec. App. 1995). Each alleged defamatory statement constitutes a "separate instance of defamation" that must be specifically alleged. *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished decision); *see also Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 (D. Md. 2015) ("To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement.").

Apart from Ghatt's general allegation that "Defendants' claims in the public record before various fact-finding tribunals in Maryland and Utah from March 22, 2015 through July 20, 2016 constitute [l]ibel per se," her Amended Complaint identifies only three specific statements that are allegedly defamatory. Am. Compl. ¶ 122. These statements are: (1) in the October 2015 claim filed with the Client Protection Fund of the Bar of Maryland, Seiler and Yates "alleged that Plaintiff had committed 'theft' of the $500,000" and that she "breached a duty to protect Defendant Yates' money"; (2) in a February 8, 2016 hearing in the Utah state court proceeding, Seiler stated that Ghatt had sent Yates "the two pages of the Escrow Agreement," for the purpose of creating "a false impression before a tribunal that [Ghatt]

6

conducted an overt act to induce [Yates] to release funds to [Ghatt]"; and (3) on July 20, 2016, Seiler "insinuated again to an Attorney Grievance Commission panel that [Ghatt] 'sent' [Yates] two pages" of the Agreement, which was "libelous as it was stated to create an impression that she attempted to swindle Yates out of money." *Id.* ¶¶ 37-38, 44, 117, 118.

Even if pleaded with greater specificity, these statements fail to state a plausible claim for defamation. Under Maryland law, attorneys are entitled to an absolute privilege, sometimes referred to as the "litigation privilege," for statements made in judicial proceedings that "have some rational relation to the matter at bar." *O'Brien & Gere Eng'rs v. City of Salisbury*, 135 A.3d 473, 483-84 (Md. 2016). This privilege covers both statements made in a courtroom and statements made in documents filed in a judicial proceeding. *Adams v. Peck*, 415 A.2d 292, 293 (Md. 1980). "This absolute privilege protects the person publishing the defamatory statement from liability even if his purpose or motive was malicious, he knew that the statement was false, or his conduct was otherwise unreasonable." *Id.*

Here, the statements identified by Ghatt were made by Seiler in filings to or otherwise during the course of judicial proceedings and "have some rational relation" to the proceeding. *O'Brien & Gere*, 135 A.3d at 483-84. First, the Utah state court proceeding clearly constitutes a judicial proceeding for the purpose of the litigation privilege, the allegation that Ghatt stole Yates's money and breached her duty to him was made in a court hearing, and it was directly connected to the breach of contract claim instituted in that court. Second, because the Attorney Grievance Commission acts as a "quasi-judicial body," charges made by attorneys to the Attorney Grievance Commission "initiate a judicial proceeding by setting in motion the grievance procedure" and are thus similarly privileged. *Kerpelman v. Bricker*, 329 A.2d 423, 425 (Md. Ct. Spec. App. 1974) (stating that an Attorney Grievance Committee "acts as a quasi-

judicial body and is invested with the authority, acting through its executive council, to file charges against an attorney in the Court of Appeals"), *cited with approval by Adams*, 415 A.2d at 293. Here, Seiler's assertion to the Attorney Grievance Commission that Ghatt sent documents to Yates bears a rational relationship to his claim that she acted improperly in executing her duties as an escrow agent. Thus, that statement is also protected by the litigation privilege.

Although Maryland courts have not reached the issue whether assertions made to the Client Protection Fund are likewise equivalent to statements made in judicial proceedings, claims made to the Client Protection Fund must be referred to the Attorney Grievance Commission, *see* Md. Rule 19-609; Regulations of the Client Protection Fund of the Bar of Maryland Currently Effective, Md. Courts, http://www.courts.state.md.us/cpf/pdfs/ regulations.pdf (last visited July 3, 2017), and final determinations are subject to judicial review, Md. Rule 19-610 (providing for judicial review of final decisions by the trustees of the Client Protection Fund). This Court therefore finds that Seiler's communications to the Client Protection Fund alleging that Ghatt engaged in theft of Yates's funds, like those made to the Attorney Grievance Commission, are also protected by the litigation privilege.

The cases cited by Ghatt from other jurisdictions are not only distinguishable but also undermine her argument in that they reaffirm the basic principle that statements made in judicial proceedings may not form the basis of a defamation claim. *See Simms v. Seaman*, 23 A.3d 1, 9-11 (Conn. App. Ct. 2011) (stating that although absolute immunity applies to allegedly defamatory statements in judicial proceedings, it does not bar a suit for the tort of vexatious litigation); *Sussman v. Damian*, 355 So.2d 809, 811 (Fla. Dist. Ct. App. 1977) ("It is the established law of this state that defamatory words published by lawyers during the due course of a judicial procedure are absolutely privileged and cannot form the basis for a defamation action

so long as the statements uttered are connected with, or are relevant or material to the cause at hand or the subject of inquiry no matter how false or malicious such statements may in fact be."); *Troutman v. Erlandson*, 593 P.2d 793, 794 (Or. 1979) ("This court has recognized the absolute privilege accorded [to] communications made by attorneys in judicial proceedings."); *Post v. Mendel*, 507 A.2d 351, 355-56 (Pa. 1986) (declining to apply the absolute privilege to an extra-judicial communication that was "not directly relevant to the court proceedings"); *Converters Equip. Corp. v. Condes Corp.*, 258 N.W.2d 712, 716-17 (Wis. 1977) (finding that the recognized absolute privilege for "statements made by parties, witnesses and counsel during the course of judicial or quasi-judicial proceedings" did not apply where "none of the recipients" of the allegedly defamatory communications was "connected with the lawsuits" and the communications were not "an integral part of the judicial proceedings"). Accordingly, the Court will grant the motion to dismiss as to the defamation claim.

Ghatt's false light claim, based on the same statements identified above, fails to state a claim for the same reason. The elements of a false light/invasion of privacy claim under Maryland law are: (1) the defendant gave "publicity to a matter concerning another that places the other before the public in a false light," (2) "the false light in which the other person was placed would be highly offensive to a reasonable person," and (3) the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995) (quoting Restatement (Second) of Torts § 625E (Am. Law Inst. 1977)). Under Maryland law, "[r]egardless of whether a declaration is styled as a defamation action or an invasion of privacy action, the same considerations and legal standards apply." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 n.1 (4th Cir.

1990) (alteration in original) (quoting *Phillips v. Wash. Magazine, Inc.*, 472 A.2d 98, 101 n.1 (Md. Ct. Spec. App. 1984)). The absolute privilege for communications made by attorneys in judicial proceedings therefore also applies to, and bars, Ghatt's false light claim. *See Holt v. Camus*, 128 F. Supp. 2d 812, 816 (D. Md. 1999) (holding that a false light claim based on statements made in a deposition was barred by the absolute litigation privilege).

Finally, Ghatt's cause of action for disparagement based on the complaints and statements made to the tribunals in Utah and Maryland also fails to state a claim. A claim of disparagement, or injurious falsehood, consists of a derogatory statement about property or business that "resembles that for defamation, but differs from it materially in the greater burden of proof resting on the plaintiff, and the necessity for special damage in all cases." *Beane v. McMullen*, 291 A.2d 37, 49 (Md. 1972) (quoting William L. Prosser, Law of Torts 919-20 (4th ed. 1971)). A plaintiff must not only establish falsity, but also "prove in all cases that the publication has played a material and substantial part in inducing others not to deal with him, and that as a result he has suffered special damage." *Id.* (quoting William L. Prosser, Law of Torts 919-20 (4th ed. 1971)).

Ghatt's disparagement claim fails for two reasons. First, the absolute privilege that bars her defamation and false light causes of action also precludes her disparagement claim. *See O'Brien*, 135 A.3d at 483 (noting that the litigation privilege "is not confined in the law of torts to matters of defamation" (quoting *Walker v. D'Alesandro*, 129 A.2d 148, 169 (Md. 1957)); Fowler V. Harper et al., Harper, James and Gray on Torts § 6.3, at 342 (3d ed. 2006) ("Although such situations are rarely litigated, it seems clear that persons participating in judicial, legislative, or executive proceedings enjoy the same privilege in disparagement cases as in defamation."), *cited with approval by O'Brien*, 135 A.3d at 410-11. Second, Ghatt does not sufficiently allege

that the publication "played a material and substantial part in inducing others not to deal with [her]." *Beane*, 291 A.2d at 49 (quoting William L. Prosser, Law of Torts 919-20 (4th ed. 1971)). Instead, her Amended Complaint asserts that Ghatt had preemptively "closed down her business in order to avoid future clients who may conduct a search and discover all of the false information and claims Defendants made against her law practice in the public record" and that she "paid legal fees defending against Defendants' words and actions." Am. Comp. ¶¶ 132-133. Neither of these claims of damages alleges that others, as a consequence of the publication of defamatory statements, were actually induced to refrain from retaining her as a lawyer or otherwise doing business with her. Accordingly, Ghatt has failed to state a claim for disparagement.

Having concluded that Ghatt's defamation, false light, and disparagement claims cannot proceed, the Court need not address the Seiler Defendants' arguments based on the statute of limitations.

### III.  Malicious Use of Process

Ghatt asserts in Count IV that Seiler engaged in malicious use of process in pursuing the Utah state court action as well as in filing the charge with the Attorney Grievance Commission. Under Maryland law, malicious use of process has five elements: (1) a civil proceeding instituted against the plaintiff; (2) without probable cause; (3) with malice; (4) that terminated in favor of the plaintiff; and (5) that inflicted a special injury upon the plaintiff which would not necessarily result in all such suits. *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997). Regarding the Utah proceeding, Ghatt does not allege that the proceeding terminated in her favor. To the contrary, she acknowledges that the Utah court "issued an order declaring that [Ghatt] owed a duty and violated a duty to Defendant Yates," which she "now has

the expense of appealing . . . as she continues to defend her rights on other matters in that case." Am. Compl. ¶ 142. Ghatt's allegations therefore suggest not only that the proceeding did not result in a judgment in her favor, but also that it may not have been terminated at the time she filed her Amended Complaint. *See One Thousand Fleet Ltd. P'ship*, 694 A.2d at 958-59 (holding that the plaintiff could not maintain an action for malicious use of process where the underlying judgment was pending on appeal at the time of filing). Moreover, Ghatt fails to allege that she suffered a special injury that would not ordinarily result. *See id.* at 956 (describing the special injury requirement); *Bartlett v. Christhilf*, 14 A. 518, 521-22 (Md. 1888) (declining to recognize "injury to the plaintiff's business or good name" as injury sufficient to state a claim for malicious use of process).

Ghatt's cause of action of malicious use of process claim based on the complaint to the Attorney Grievance Commission also fails to state a plausible claim for relief. Again, Ghatt does not allege either that the grievance procedure has terminated in her favor or that special injury has resulted. Further, because a "disciplinary proceeding for professional misconduct" is neither "a proceeding of a criminal character" nor a "trial of an action at law," it cannot form the basis of a malicious use of process claim. *Kerpelman*, 329 A.2d at 427-28 (declining to consider granting leave to amend the complaint to add a malicious prosecution claim); *see also One Thousand Fleet Ltd. P'ship*, 694 A.2d at 955 ("In Maryland, the term 'malicious use of process' means malicious prosecution of a civil claim. 'Malicious prosecution' in Maryland applies to criminal charges, but otherwise shares the same elements as malicious use of process."). Where Ghatt's malicious use of process claims are fundamentally flawed, the Court will dismiss Count IV of the Amended Complaint.

### IV. Tortious Interference with Contract

In Count V of her Amended Complaint, Ghatt alleges that Defendants tortiously "interfered with the Escrow Agreement" by "attempt[ing] to use the judicial system to create additional duties owed by Plaintiff and to add new clauses and rights that were not intended" by the Agreement. Am. Compl. ¶ 141. As relevant here, tortious interference with a contract "is committed when a third party's intentional interference with another in his or her business or occupation . . . induces a breach of an existing contract." *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 117 (Md. 1994). This tort has five elements: "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991). Ghatt's claim must fail because she does not allege that either Strategic Capital or Grove Plaza, the third parties with whom Ghatt had entered into a contract, breached the Agreement, and that such a breach was the result of intentional interference by Defendants. Any such allegation would be implausible because Defendants had no interest in having Strategic Capital or Grove Plaza breach the Agreement. Count V of the Amended Complaint will be dismissed.

### V. Breach of the Implied Covenant of Good Faith and Fair Dealing

Lastly, in Count VI, Ghatt alleges that Seiler breached the implied covenant of good faith and fair dealing when he possessed the full Agreement but referred to it in various proceedings as an "alleged" agreement and "extracted two pages of an early draft despite having the latest 12-page final draft in hand." *Id.* ¶ 146. In Maryland, a contract "gives rise to an implied duty of good faith and faith dealing" that "concerns the performance and enforcement of the contact itself." *Blondell v. Littlepage*, 991 A.2d 80, 90 (Md. 2010). The duty "does not obligate a

[party] to take affirmative actions that the [party] is clearly not required to take under [the contract]," but rather "simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Id.* at 90-91 (alterations in original) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd.*, 213 F.3d 175, 182-84 (4th Cir. 2000)). Here, the only contract mentioned by Ghatt is the Agreement, which was signed by Strategic Capital, Grove Plaza, and Ghatt as escrow agent on behalf of the Ghatt Law Group. Neither Seiler nor Yates signed the Agreement. There is accordingly no underlying contract based upon which Seiler would owe Ghatt an implied duty of good faith and fair dealing. The Court will therefore dismiss Count VI of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED. A separate Order shall issue.

Date: July 20, 2017

THEODORE D. CHUANG
United States District Judge